**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ophir Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>Honeywell International Incorporated,<br><br>    Defendant. | No. CV-17-02083-PHX-GMS<br><br>**ORDER** |
| Honeywell International Incorporated<br><br>    Counter-Claimant,<br><br>v.<br><br>Ophir Corporation<br><br>    Counter-Defendant. | |

Pending before the Court is the Motion to Dismiss of Plaintiff/Counterdefendant Ophir Corporation (Doc. 194) and the Motion for Judgment on the Pleadings of Defendant/Counterclaimant Honeywell International (Doc. 203). For the following reasons, the Court denies Ophir's motion and grants in part and denies in part Honeywell's motion.

## BACKGROUND

Ophir is in the business of designing laser-based radar systems for airplanes. Honeywell's Aerospace Division develops commercial air data computer systems. In 2013, Ophir and Honeywell began discussing a partnership and signed a nondisclosure

agreement ("NDA"). The NDA sought to protect the parties' confidential information. In short, the NDA required the parties to only use each other's confidential information to evaluate a potential business relationship or to perform further actions pursuant to purchase orders. The NDA defined confidential information as that which is "not generally known" and that it must be specifically marked or designated as confidential. From June to September 2014, Honeywell operated test flights which were equipped with Ophir's systems. Both parties collected data from these flights. In October 2014, February 2015, and November 2015, Honeywell issued Statements of Work and Purchase Orders relating to work that Ophir was to complete for Honeywell. The Purchase Orders state that they are subject to Honeywell's General Purchase Order Provisions ("GPOPs"). The GPOPs define confidential information as all information that has been supplied by Honeywell, Ophir's designs in connection with the Purchase Order, Ophir's designs to meet a Honeywell technical requirement, or a derivative of any of the above. Ophir completed work for Honeywell pursuant to the contracts. Honeywell and Ophir also participated in more test flights in May 2015.

In March 2016, the parties' relationship deteriorated. Honeywell alleged that Ophir was using and disclosing Honeywell confidential information. Honeywell requested that Ophir cease from engaging in any work on its laser-based radar system, unless the work was for Honeywell. Ophir has also alleged that Honeywell is improperly using and disclosing its confidential information in patent applications and presentations to clients. Ophir filed suit, seeking declaratory relief about the scope of the contracts and its duties pursuant to the contracts. Honeywell counterclaimed that Ophir breached their contractual obligations.

## DISCUSSION

### I. Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from

them." *Id.* However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is "properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995); *Fajardo v. Cty. Of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999). The moving party must "clearly establish[ ] on the face of the pleadings that no material issue of fact remains to be resolved." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion, and so the same standard of review is used in both. *Cafasso ex rel. v. General Dynamics C4 Systems, Inc.*, 637, F.3d 1047, 1054 n. 4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). The court generally may not consider matters outside the pleadings without converting the motion into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, the court may "consider documents on which the complaint necessar[ily] relies." *Rosa v. Cutter Pontiac Buick GMC of Waipahu, Inc.*, 120 Fed. Appx. 76, 77 (9th Cir. 2005) (finding that a sales contract and its addendum were documents upon which the complaint necessarily relied).

## II. Analysis

### A. Ophir's Motion to Dismiss

#### 1. Breach of Contract—Contract Provisions

Both parties agree the contracts are governed by New York law. Under New York law, questions of contract interpretation are a matter of law, and are within the Court's province to reach on a motion to dismiss. *See Bethlehem Steel Co. v. Turner Const. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957) ("[W]here the intention of the parties may be gathered from the four corners of the instrument, interpretation of the contract is a question of law."). Ophir thus moves to dismiss Honeywell's breach of contract Counterclaims because, if the contracts are construed as it requests, Honeywell fails to state a claim for which relief can be granted.

##### a. The GPOPs

The 2014 and 2015 GPOPs contain identical provisions relating to confidential information. The contract states:

> All information, including without limitation specifications, samples, drawings, data, documents, computer software, materials, know-how, designs, inventions, processes, and other technical, business, or financial information, that: (a) has been or will be supplied to Supplier by or on behalf of Honeywell, whether transmitted in writing, orally, or otherwise; (b) Supplier designs, develops, or creates in connection with this Purchase Order (as to individual items or a combination of components or both, whether or not completed); (c) Supplier designs, develops, or creates to meet Honeywell-furnished technical requirements (as to individual items or a combination of components or both, whether or not completed); or (d) is a *derivative* of (a), (b), or (c) that Supplier designs, develops or creates are deemed to be 'Confidential Information' of Honeywell.

(Doc. 43, Ex. 2, § 15.1) (emphasis added).

The subsequent provision states:

> All Confidential Information is deemed to be a 'work made for hire' under U.S. Copyright Law and made in the course of services rendered, and Honeywell will be deemed the author of such

> work, if any such work is determined not to be a work made for hire, this article will operate as an irrevocable assignment by the author and the Supplier of all right, title and interest throughout the world in the copyright in the work, including the right to make *derivatives* thereof and revisions thereto.

*Id*. at § 15.2 (emphasis added).

Ophir moves to dismiss Honeywell's Counterclaim based on the GPOP provisions that define Honeywell's confidential information. Ophir asserts that the GPOPs make all confidential information either a "'work made for hire' under U.S. Copyright law" or an assignment of a copyright to the work. Ophir thus argues, apparently, that the GPOPs only give rise to remedies under copyright law and because Honeywell avows that it has not made any copyright claims in its Counterclaim, it has not made any claim to which the GPOP's terms would have given it a remedy.

The problem with this argument is that the GPOPs first define what will be "deemed to be 'Confidential Information' of Honeywell." It thereafter specifies that Honeywell's confidential information is deemed to be 'work made for hire' under U.S. Copyright law. But there is nothing in the GPOPs (or at least Ophir identifies nothing) that specifies that copyright remedies are the unique remedy that Honeywell may pursue for the misuse of what is deemed to be confidential information that belongs to Honeywell.

The GPOPs define information other than derivative information as being "deemed to be 'Confidential Information' of Honeywell." To the extent it does so, Ophir's argument that the meaning of the term "derivative" limits Honeywell's remedies under the GPOP to copyright claims is further discounted, as is any implication that the Counterclaim only applies to "confidential information' that is derivative. At any event, Ophir does nothing to explain what the term of art "derivative" means in copyright law, nor how it would preclude the counterclaim being made by Honeywell—presumably for confidential information that both is and is not derivative of other confidential information. To the extent that Ophir asserts that non-derivative confidential information was not used by Ophir that is something that this Court cannot decide on a motion to

dismiss.

Ophir is correct in stating that the NDA's language pertaining to "confidential information" is different from the GPOPs' language on the same topic. But that does not mean that the provisions of the GPOPs pertaining to confidential information are never applicable.

**b.  Purchase Orders' Scope**

Honeywell and Ophir entered into five contracts: the 2013 and 2016 NDA and three Purchase Orders which incorporated the 2014 and 2015 GPOPs. Only the GPOPs contain such expansive language about confidential information as Honeywell's Counterclaim suggests. *Id*. at § 15.1. The 2013 and 2016 NDAs define confidential information differently:

> 'Confidential Information' means any information in any form that is disclosed to Recipient by or on behalf of Discloser that is not generally known including, without limitation, trade secrets, know how, techniques, specifications, drawings, designs, design concepts, processes, and testing methodologies. Information will not be considered as Confidential Information unless (a) marked 'CONFIDENTIAL' or 'PROPRIETARY' at the time of disclose or (b) disclosed orally or visually but identified as confidential at the time of disclosure and thereafter designated as confidential in a writing sent to Recipient within 30 days of disclosure summarizing the Confidential Information sufficiently for identification.

(Doc. 43, Ex. 1, § 1; Doc. 43, Ex. 4, § 1.4).

The GPOPs were incorporated into the three Purchase Orders signed by the parties. (Doc. 50, Ex. 5) ("Honeywell's GPOP's have been modified and approved by Honeywell & OPHIR Corp for this Purchase Order."); (Doc. 50, Ex. 7) ("This PO is governed by a modified Honeywell GPOP which has been approved by Honeywell & OPHIR Corp."); (Doc. 50, Ex. 10) ("Honeywell's 'General Purchase Order Provisions' (GPOP) apply to each Purchase Order (PO)."). Each Purchase Order was related to a Statement of Work detailing specific projects that Ophir was to complete for Honeywell. (Doc. 50, Exs. 6, 8, 11). The terms of each Purchase Order clearly state that the GPOPs

were approved for the Purchase Order, and thus for the projects stemming from the related Statements of Work.

It appears that the GPOPs do not generally supersede the 2013 NDA. The 2013 NDA states that "[a]ll modifications to this Agreement must be in writing signed by both parties." (Doc. 43, Ex. 1). Nothing in the language of the GPOPs expresses a modification of the 2013 NDA. The GPOPs do provide that "[t]his Purchase Order, supersede [sic] any prior or contemporaneous communications, representations, promises, or negotiations, whether oral or written, respecting the subject matter of this Purchase Order." *Id*. at Ex. 2, § 33.18. Therefore, it appears that the GPOPs supersede the 2013 NDA with respect to the subject matter of the Purchase Order. Similarly, however, it does not appear that the 2016 NDA supersedes the GPOPs. The 2016 NDA does state that "[t]his Agreement constitutes the entire agreement of the parties relating to its subject matter." (Doc. 43, Ex. 4). However, the GPOPs provide that "[n]o change to or modification of this Purchase Order will be binding unless in writing, specifically identifying that it amends this Purchase Order." *Id*. at Ex. 2, § 33.10. No language in the 2016 NDA specifically identifies that it amends the GPOPs.

To the extent that Ophir argues in its Reply that the subject matter of the three purchase orders did not relate to the development of a LIDAR-based OADS, or any of Honeywell's other counterclaims, that is also an argument that this Court may not evaluate on a motion to dismiss.

Thus, at least for the present, Honeywell can state a claim for breach of contract by alleging that information shared pursuant to the Statements of Work and Purchase Orders violates the confidential information provision of the GPOPs. Or, Honeywell can state a claim for breach of contract by alleging that information shared outside of the scope of the Statements of Work and Purchase Orders violates the confidential information provisions of the NDAs. Construing the facts in the light most favorable to Honeywell, Honeywell does state a claim. Ophir's Motion to Dismiss is therefore denied.

*/ / /*

### 2. Breach of Contract—Hybrid System

Honeywell's Counterclaim alleges that "Ophir has marketed and/or is marketing a 'hybrid' Air Data System to third parties." (Doc. 180, ¶ 60). Honeywell alleges that it invented the system, which is now reflected in the public domain through U.S. Patent Application No. 15/171,502. *Id*. at ¶ 61. Honeywell asserts that it disclosed this invention to Ophir prior to the publication of the patent application. *Id*. at ¶ 62. The NDAs state that information that "has become legally available in the public domain through no fault of Recipient" is not considered "confidential information." (Doc. 43, Ex. 4, § 4.1). The design of the hybrid system is now public information. Although Honeywell's Complaint contains no allegations about *when* Ophir was allegedly marketing a hybrid system to third parties, Honeywell could state claim for disclosures allegedly made by Ophir *prior* to Honeywell's publication of the patent. And, at any rate, it is not proper for a court to consider such factual arguments at this stage. Ophir's Motion to Dismiss is denied for claims relating to the hybrid system.

### 3. Breach of Contract—Identity of Potential Customers

Honeywell's Counterclaim states that "Ophir secretly and surreptitiously began marketing LiDAR-based Air Data Systems and information to third parties that Honeywell had confidentially disclosed to be its prospective customers, including Boeing and Embraer." (Doc. 180, ¶ 7). Later, Honeywell also states that "Honeywell shared specific and confidential trade secret information concerning customer opportunities for the LiDAR-based Air Data System, through which Ophir learned the identity of certain potential third-party customers. Critically, Honeywell identified Boeing as a potential customer to Ophir, in confidence." *Id*. at ¶ 66. Honeywell further alleges that the parties signed a purchase order in 2014 "to authorize Ophir's work toward achieving a commercially viable LiDAR-based Air Data System." *Id*. at ¶ 25. The 2014 Purchase Order incorporated Honeywell's General Purchase Order Provisions. *Id*. at ¶ 27. The General Provisions state, in part, that "[a]ll information, including . . . other technical, business, or financial information . . . [that] has been or will be supplied to [Ophir] by or

on behalf of Honeywell . . . are deemed to be 'Confidential Information' of Honeywell." *Id.* at ¶ 28. Honeywell alleges similar facts pertaining to the 2015 Purchase Order, which contains the same contractual language. *Id.* at ¶¶ 33–38. The Court construes the facts in the light most favorable to Honeywell. Under Honeywell's facts, it is plausible that Honeywell disclosed the identity of Boeing and Embraer as potential customers in conjunction with the 2014 and 2015 Purchase Orders and related work. Although there may be an issue as to whether the information that Boeing or Embraer may be potential customers for the LIDAR-based OADS can in fact be confidential, that is a question more appropriately addressed at a later stage. The GPOPs deem business and financial information to be confidential. The identity of potential customers could be considered business or financial information. Ophir's Motion to Dismiss is denied for claims relating to Honeywell's potential customers.

### 4. Breach of Contract—Ophir's LiDAR Proprietary Information

Ophir generally argues that Honeywell has failed to plead facts that indicate that Ophir is doing something other than using its own intellectual property to further develop its laser-based radar system. Honeywell has pleaded that Ophir did not have a commercially viable LiDAR system prior to working with Honeywell. *Id.* at ¶ 4. Honeywell has also pleaded that it shared numerous types of information with Ophir including architecture details for sensor integration, flight test data, hardware installation, and more. *Id.* at ¶ 44. Whether or not Ophir has been using its own proprietary information or improperly using Honeywell's is a question of fact that is not for the Court to decide. Ophir's Motion to Dismiss the "remaining allegations" is denied.

### 5. Conversion

Count Eight of Honeywell's Counterclaim alleges Ophir's continued possession and use of Honeywell's proprietary information interferes with Honeywell's superior possessory right and constitutes conversion. *Id.* at ¶¶ 152–62. Conversion "is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *State v. Seventh Regiment Fund, Inc.*, 774

N.E.2d 702, 710 (N.Y. 2002) (quotations omitted). And, "[a]lthough an idea alone cannot be converted, the tangible expression of implementation of that idea can be." *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 618 (S.D.N.Y. 2003). Converted goods "may include intellectual property" where the idea has been "reduced to practice." *Id*. Therefore, Honeywell's proprietary information is a "good" that can be converted. Under New York law, "a defendant who, though having custody of goods, does not exclude the owner from exercise of his rights is not liable for conversion." *Seventh Regiment Fund*, 774 N.E.2d at 710 (quotations omitted). Honeywell also alleges, however, that Ophir has created a product derived from Honeywell's confidential information, a product which Honeywell has no access to and is excluded from. Ophir's Motion to Dismiss Count Eight is therefore denied.

### 6. Unjust Enrichment

Count Nine of Honeywell's Counterclaim alleges that Ophir has been unjustly enriched by the wrongful disclosure and use of Honeywell's confidential information. *Id*. at ¶¶ 163–72. Honeywell brings the claim in the alternative to its other claims. *Id*. at ¶ 172. Ophir seeks to dismiss the claim, arguing that unjust enrichment claims are not appropriate where the conduct at issue is governed by a contract. An unjust enrichment claim is based on the premise that "the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (quotations omitted). If Honeywell's breach of contract claims do not succeed, Honeywell may nonetheless seek to demonstrate that Ophir was unjustly enriched. The Court denies Ophir's Motion to Dismiss Count Nine.

## B. Honeywell's Motion for Judgment on the Pleadings

### 1. Counts Two–Five

Counts Two through Five of Ophir's Complaint seek declaratory relief. Honeywell seeks dismissal of these claims, arguing that they act to deprive Honeywell of its right to try its breach of contract claims to a jury. Under 28 U.S.C. § 2201, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Although the "existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate, . . . [t]he availability of other adequate remedies may make declaratory relief inappropriate." *StreamCast Networks, Inc. v. IBIS LLC*, No. 15-cv-04239-MMM, 2006 WL 5720345, at *4 (C.D. Cal. 2006) (internal quotations and citations omitted). Declaratory relief remains appropriate "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." *Id*. Honeywell brings five breach of contract claims relating to breach of the three purchase orders and breach of the two NDA. (Doc. 180). Each claim specifically relates to Honeywell's allegations that Ophir breached the confidential information provisions of the purchase orders and the NDAs. *Id*.

In Count Two, Ophir requests a declaration that "Honeywell did not contract with Ophir for Ophir to develop an OADS for Honeywell." (Doc. 171, ¶ 205).. A jury could find that Ophir violated the confidentiality agreements of the purchase orders and the NDAs regardless of whether Ophir was contracted to develop an OADS. Because the breach of contract claims may not settle the question of whether or not Ophir contracted to develop an OADS for Honeywell, the Court denies Honeywell's Motion as to Count II.

Counts Three, Four, and Five of Ophir's Complaint relate more closely to the subject of Honeywell's breach of contract claims. Ophir asks the Court to declare the meaning of certain terms in the purchase orders and NDAs related to what qualifies as confidential information. In Count Three, Ophir requests a declaration that "the definition of 'Confidential Information' under the GPOPs does not include information that Honeywell provided to Ophir for a purpose other than to permit Ophir to perform the First PO or Second PO." *Id*. at ¶ 213. In Count Four, Ophir requests a declaration that "the term 'derivative' as used in the GPOPs has the meaning assigned to that term in copyright jurisprudence and does not include intellectual property that cannot be the subject of a copyright." *Id*. at ¶ 220. Finally, in Count Five, Ophir requests a declaration

"that 'Confidential Information' as defined in the NDAs and GPOPs (i) does not include intellectual property that Ophir invented or developed prior to receiving any Confidential Information from Honeywell; (ii) does not include intellectual property that Ophir invented or developed prior to performing any work for Honeywell under any PO; (iii) does not include any information that Ophir invented or developed without using Honeywell Confidential Information, except for information Ophir developed to perform a PO for Honeywell." *Id.* at ¶ 229.

While these requests have certain overlaps with issues of contract interpretation that will likely play a role in Honeywell's breach of contract claims, the requested declaratory relief is not necessarily duplicative of the breach of contract claims. Depending on how the contracts are construed, the breach of contract resolution may not overlap with all of Ophir's claims for declaratory relief. Moreover, a ruling on Ophir's claims for declaratory relief will not infringe on Honeywell's right to have a jury trial on its breach of contract claims. *See Chevron Corp. v. Donziger*, 800 F.Supp.2d 484, 494–95 (S.D.N.Y. 2011) ("The Declaratory Judgment Act . . . is simply a procedural mechanism that provides a basis for seeking relief . . . [and] is neither inherently equitable nor inherently legal. The right to a jury trial . . . depends upon the nature of the underlying claim.") (citations omitted); Fed. R. Civ. P. 57. To the extent there are questions of fact related to the breach of contract claims and properly made jury demand, a jury could decide those questions of fact, regardless of whether the cause of action is for declaratory relief or breach of contract. And, even if the Court were to construe the contracts according to Ophir's requested declaratory relief, Honeywell would remain able to try the question of breach of contract, as construed by the Court, to the jury. At this stage of the litigation, it is not yet clear that Ophir's requested declaratory relief is duplicative of Honeywell's contractual claims. The Court therefore denies Honeywell's motion to dismiss Counts Three, Four, or Five.

### 2. Count Six

In Count Six, Ophir alleged that three of its employees, Martin O'Brien, Loren

Caldwell, and Phillip Acott, developed a "method for using aircraft static pressure together with the LIDAR data to generate augmented air data readings." (Doc. 171, ¶ 142). Ophir claims that its employees taught Honeywell employees Xiao Zhu Fan, Grant Lodden, Brett Northcutt, and Dan Kimmel this method. *Id.* at ¶¶ 141–45. In February 2016, Honeywell filed Provisional Patent Application No. 62/300,190, and then in June 2016, Honeywell filed U.S. Patent Application No. 15/171,502, which claimed priority to the Provisional Patent Application. *Id.* at ¶¶ 147–48. Ophir alleges that the Patent Application claims the method of using static pressure and LIDAR data that Ophir developed and disclosed to Honeywell. *Id.* at ¶ 150. The Patent Application lists Fan, Lodden, Northcutt, and Kimmel as the sole inventors. *Id.* at ¶ 154. Ophir also alleges that two additional Honeywell patent applications use and disclose Ophir's confidential information: Patent Application No. 15/280,838, which discusses methods of mounting a laser-based radar system on an aircraft, and Patent Application No. 15/280,847, which discusses methods for ensuring eye safety. *Id.* at ¶¶ 235–36. Ophir claims that these patent applications are a breach of the NDAs signed by Ophir and Honeywell. Ophir seeks an injunction requiring Honeywell to comply with the NDAs and damages resulting from the alleged breach. Ophir also seeks a declaration that the Honeywell employees are not the inventors of the '502 Application, that the Ophir employees are the inventors of the '502 Application, and that Ophir is the legal and equitable owner of the '502 Application and any resultant patents.

Honeywell seeks a dismissal of Ophir's claims for declarations of inventorship. In the case of a pending patent application, Ophir's "requested relief—a declaration of the "true" inventor—is tantamount to a request for either a modification of inventorship on pending patent applications or an interference proceeding." *HIF Bio, Inc. v. Yung Shin Pharmaceutical Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010). Federal statutes give the Director of the United States Patent and Trademark Office the authority to amend the inventors named on a patent application and to conduct interference proceedings. 35 U.S.C. §§ 116, 135(a). And once a patent issues, § 256 provides a private

right of action. But, § 116 "does not provide a private right of action to challenge inventorship of a pending patent application" and §§ 116 and 135(a) "preclude the district court from granting the plaintiff['s] requested relief—a declaration of the 'true' inventor of a pending patent application." *HIF Bio*, 600 F.3d at 1354. Ophir requests that this Court declare that "Lodden, Fan, Kimmel, and Northcutt are not the inventors of the '502 Application" and that "the inventors of the '502 Application are O'Brien, Caldwell, and Acott." (Doc. 171, ¶ 246(a)–(b)). Alternatively, Ophir asks the Court to declare that "O'Brien, Caldwell, and Acott are additional inventors of the '502 Application." *Id.* at ¶ 247(a)–(b). There is no private right of action to challenge inventorship of a pending patent application, and so the Court grants Honeywell's Motion as to Ophir's claims for declarations of inventorship.

Since the initial Motion for Judgment on the Pleadings was filed, Ophir has amended its Complaint to make clear that it is also claiming breach of contract and seeking injunctive relief and money damages. Ophir also seeks a declaration that it is the legal and equitable owner of the '502 Application. The question of whether Honeywell breached the NDAs in filing the '502, '838, and '847 Applications is distinct from the question of inventorship and whose proprietary information forms the basis of the invention. *See, e.g.*, *TransCardiac Therapeutics, Inc. v. Yoganathan*, 15 F.Supp.3d 1364, 1371 (N.D. Ga. 2014) (noting, in the context of determining whether federal jurisdiction exists, that claims of breach of contract can be litigated without reaching issues of inventorship). Similarly, inventorship and ownership are separate issues. *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) ("[I]ssues of patent ownership are distinct from questions of inventorship."). In renewing its Motion for Judgment on the Pleadings after the amendments, Honeywell only seeks to dismiss Count Six "to the extent it seeks relief as to inventorship of a pending patent application." (Doc. 203, p. 3). Due to the Court's obligation to view facts in the light most favorable to the non-moving party, the Court denies Honeywell's motion in part as to the claims of breach of contract and patent ownership.

**CONCLUSION**

Ophir's Motion to Dismiss Honeywell's Counterclaim is denied. Honeywell's Motion for Judgment on the Pleadings of Ophir's Complaint is granted in part and denied in part. The Court dismisses Ophir's claims in Count Six seeking a determination of the inventorship of a pending patent. There is no private right of action for such a declaration. Ophir's claims of breach of contract in Count Six remain. The balance of Honeywell's Motion for judgment on the pleadings is denied for the reasons set forth above.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss of Plaintiff/Counter Defendant Ophir Corporation (Doc. 194) is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Judgment on the Pleadings of Defendant/Counterclaimant Honeywell International (Doc. 203) is **GRANTED IN PART AND DENIED IN PART** as follows:

1. The Motion as to Counts Two, Three, Four, and Five of Ophir's Second Amended Complaint is **DENIED**.

2. The Motion as to Count Six is **DENIED** as to breach of contract claims and **GRANTED** as to declarations of inventorship.

**IT IS FURTHER ORDERED** finding the earlier versions of both Motions (Docs. 73, 91) **MOOT**.

Dated this 6th day of September, 2018.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge